Randall B. Reed, Wyo. Bar No. 5-2863
DRAY, THOMSON AND DYEKMAN, PC
204 E. 22nd St.
Cheyenne, WY 82001
Telephone:    (307) 634-8891
Facsimile:    (307) 634-8902

Attorneys for Plaintiffs

ORIGINAL
FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

OCT 18 2010

Stephan Harris, Clerk
Cheyenne

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**

| | |
|---|---|
| AFTG-TG, L.L.C., a Wyoming limited liability company, PHILLIP M. ADAMS & ASSOCIATES, L.L.C., a Utah limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>FEATURE INTEGRATION TECHNOLOGY INC., a Taiwan corporation, VIA TECHNOLOGIES, INC., a Taiwan corporation, VIA TECHNOLOGIES, INC., USA, a California corporation, CENTAUR TECHNOLOGY, a Texas Corporation, VIA TECHNOLOGIES CPU, INC., a Texas corporation, SILICON INTEGRATED SYSTEMS CORPORATION, a Taiwan corporation, SILICON INTEGRATED SYSTEMS CORPORATION (USA), a California corporation, STANDARD MICROSYSTEMS CORPORATION, a Delaware corporation, NUVOTON TECHNOLOGY CORPORATION, a Taiwan corporation, NUVOTON TECHNOLOGY CORPORATION AMERICA, a California corporation, | **COMPLAINT FOR PATENT INFRINGEMENT AND TRADE SECRET THEFT**<br><br>Civil No. 10 CV230-D<br><br>Judge Downes |

| PEGATRON CORPORATION, a Taiwan corporation, PEGATRON TECHNOLOGY SERVICE INC., an Indiana corporation, UNIHAN, a Taiwan corporation,<br><br>Defendants. | |
|---|---|

Plaintiffs AFTG-TG, L.L.C. ("AFTG") and Phillip M. Adams & Associates, L.L.C. ("Adams") brings this action for the infringement of multiple U.S. Patents. This is a claim for patent infringement and arises under the patent laws of the United States, Title 35 of the United States Code. This Court has exclusive jurisdiction over the subject matter of this Complaint under 28 U.S.C. § 1338(a). Venue is proper in this District under 28 U.S.C. §§ 1391(c)-(d) and 1400(b).

## PLAINTIFFS

1.     Adams is a Utah limited liability company with its principle place of business now in Wyoming. Adams owns all right, title and interest in and has standing to sue for infringement of the United States patents identified below:

- 5,983,002 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '002 patent");

- 6,401,222 titled "Defective Floppy Diskette Controller Detection Apparatus and Method" ("the '222 patent");

- 6,687,858 entitled "Software-Hardware Welding System" ("the '858 patent");

- 7,251,752 titled "Computerized Product Improvement Apparatus and Method" ("the '752 patent");
- 7,069,475 entitled "Software-Hardware Welding System" ("the '475

2

patent"); and

- 7,409,601 entitled "Read-Write Function Separation Apparatus and Method" ("the '601 patent");

(collectively "Adams patents-in-suit").

2.    AFTG is a Wyoming limited liability company with its principal place of business in Wyoming.  AFTG owns all right, title and interest in and has standing to sue for infringement of the United States patents identified below:

- 6,691,181 titled "Programmatic Time-Gap Defect Detection Apparatus and Method" ("the '181 patent");

- 7,249,203 titled "Programmatic Time-Gap Defect Detection Apparatus and Method" ("the '203 patent");

- 7,472,207 titled "Optimized-Incrementing, Time-Gap Defect Detection Apparatus and Method" ("the '207 patent");

- 6,842,802 titled "Programmatic Time-Gap Defect Correction Apparatus and Method" ("the '802 patent");

- 7,366,804 titled "Programmatic Time-Gap Defect Correction Apparatus and Method" ("the '804 patent"); and

- 7,653,766 titled "Time-Gap Defect Detection Apparatus and Method" ("the '766 patent");

(collectively the "AFTG patents-in-suit"). The Adams patents-in-suit and the AFTG patents-in-suit are collectively referred to hereinafter as the "Patents-in-Suit".

3

3.    Dr. Phillip M. Adams heads plaintiff Adams and AFTG, and resides in Wyoming.  He has a Ph.D. in applied computer science, a D.Sc. in engineering and over 30 years of experience in the computer industry.  Dr. Adams has served on the faculty of major universities and holds numerous patents.  In the late 1980s, Dr. Adams characterized a defect in the NEC 765A floppy disk controller (FDC) present in most personal computers at the time.  This defect caused the random destruction or corruption of data without proper notification to the user that data had been destroyed or corrupted.

4.    The random destruction or corruption of data in computers is a serious, and potentially cataclysmic, problem.  Computers are used throughout society and the data integrity of computers is the lifeblood of the information age.  The public relies upon the integrity of data stored by computers and exchanged between them to support virtually all aspects of society, including the multitude of financial transactions, the accurate and effective diagnoses and treatment of illnesses and the proper design and construction of automobiles, aircraft, bridges, dams, office buildings and various other structures and devices.

5.    The scope and seriousness of the FDC-related defects characterized by Dr. Adams were illustrated by the $2.1 billion *Toshiba* class-action settlement in the Eastern District of Texas.  In addition to the *Toshiba* class-action settlement, the United States Government settled False Claims Act claims against Toshiba for $33.5 million. The State of California settled California State False Claims Act claims against Toshiba

for $33 million. Also, several billion-dollar class-action lawsuits are presently pending against different computer companies in various federal and state courts because of such defects built into various computers.

6.     In the 20 plus years since Dr. Adams characterized the NEC 765A defect, Dr. Adams has discovered related data corruption defects and has devoted thousands of hours to developing solutions, alerting various federal and state governments, computer companies and private purchasers to such defects and assisting computer manufacturers to acknowledge and remedy these defects. In addition, Dr. Adams has developed several patented computer technologies that address such defects. First, he developed patented computer technology (both hardware and software) that detect which computers are defective. Second, he developed patented solutions (both hardware and software) that resolve the defects found in such computers.

7.     Hewlett Packard (one of the world's leaders in personal computers) obtained a license from Adams, and then placed Adams' solution on the Internet for all its customers throughout the world. Thus, any Hewlett Packard customer could go to this Internet website, download the solution and fully repair such defects in his or her computer. The website included notice of Adams' patent. Compaq (before it merged with Hewlett Packard) also obtained a license under Dr. Adams' patent.

8.     In May of 2005, in compliance with the terms of the Hewlett Packard and Compaq license agreements, Adams was forced to file suit against numerous companies in the computer industry for the theft of his trade secrets and infringement of

5

patented technology owned by Adams (the "Winbond Litigation"). Previously, Adams had been involved and occupied in litigation with Gateway Computer Company from 2002 until 2006 when Gateway settled on the first day of trial. Adams has been involved in litigation since at least 2002 against computer companies such as Gateway, Sony, Dell, IBM, Lenovo, Quanta, Fujitsu, and Dell.

9. Through the course of the Winbond Litigation it was discovered that Winbond's infringing chips had been distributed throughout the computer industry and had been knowingly incorporated into the Defendants products.

10. In May 2010 Adams retained the firm of Quinn Dumke LLC to approach each of the Defendants, under F.R.E. 408, with the hope of entering into a mutually acceptable agreement to address the suspected patent infringement without costly litigation.

11. Instead of entering into fruitful negotiations concerning what was then thought to be clear liability for infringement, Defendants instead determined that it would be more beneficial to either wait for the determination of infringement in the Winbond Litigation, or request that Adams supply claim charts and enter into a level of discovery more suited for Markman hearings during litigation.

12. Throughout the course of the Winbond Litigation many companies that were party to the suit entered into settlement agreements with Adams, but the defendants Winbond Electronics Corporation ("Winbond"), ASUSTek Computer, Inc., ASUS Computer International, Micro-Star International, and Micro-Star USA obstinately

6

maintained a position of non-infringement.

13.     Defendant ITE Tech, Inc. ("ITE") has had a default judgment of patent infringement and misappropriation of trade secrets entered and is awaiting the Court's determination of jurisdiction prior to providing enforcement.

14.     On October 5, 2010 a jury of 12 unanimously determined that Winbond had infringed all asserted claims of Adams '002 patent.

15.     As a result of the verdict and default judgment it is clear that all Winbond, Nuvoton (Winbond's wholly owned I/O chip subsidiary), or ITE super I/O chips with an Opus International based FDC core ("Infringing Chips") infringe the patent in suit. Additionally, it is believed that chips from VIA Technologies, Inc. ("VIA"), Silicon Integrated Systems Corporation ("SIS"), and Standard Microsystems Corp. ("SMSC") use the same infringing architecture in their chips ("Dependent Chips"), which have been incorporated into the defendants' products.

16.     The Defendants' knowing and intentional use, manufacture and/or importation of infringing methods, articles of manufacture, and products subject them to, at a minimum, liability under 35 U.S.C § 271 (a), (b), (c) and (g).

## **DEFENDANTS**

17.     Feature Integration Technology Inc. ("Fintek") is a company organized under the laws of Taiwan, with a place of business at 3F-7, No.36, Tai Yuen St., Chupei City, Hsinchu, Taiwan, R.O.C.; and all U.S. subsidiaries, if any.

7

18.    VIA Technologies, Inc. is a company organized under the laws of Taiwan, with a place of business at 1F, 531, Chung-Cheng Rd., Hsin-Tien, Taipei 231, Taiwan, R.O.C.; and all U.S. subsidiaries. (VIA Technologies, Inc., VIA Technologies, Inc., USA, Centaur Technology, and VIA Technologies CPU, Inc. are collectively referred to as "VIA").

19.    VIA Technologies, Inc., USA is a California corporation with a place of business at 940 Mission Court, Fremont, CA 94539, U.S.A.

20.    Centaur Technology is a Texas corporation with a place of business at 7600-C N. Capital of Texas Hwy, Suite 300, Austin, Texas 78731, U.S.A.

21.    VIA Technologies CPU, Inc. is a Texas corporation with a place of business at 701 Highlander Blvd., Suite 300, Arlington, Texas 76015, U.S.A.

22.    Silicon Integrated Systems Corporation is a company organized under the laws of Taiwan, with a place of business at No.180, Sec.2, Gongdaowu Rd., Hsin-Chu, Taiwan 300, R.O.C.  (Silicon Integrated Systems Corporation and Silicon Integrated Systems Corporation (USA) are collectively referred to as "SIS").

23.    Silicon Integrated Systems Corporation (USA) is a California corporation with a place of business at 838 N. Hillview Dr., Milpitas, California 95035, U.S.A.

24.    Standard Microsystems Corporation ("SMSC") is a Delaware corporation with a place of business at 80 Arkay Dr., Hauppauge, NY 11788, U.S.A.

25.    Nuvoton Technology Corporation is a company organized under the laws of Taiwan, with a place of business at No. 4, Creation Rd. III, Hsinchu Science Park,

Taiwan, R.O.C.; and all U.S. subsidiaries. (Nuvoton Technology Corporation and Nuvoton Technology Corporation America are collectively referred to as "Nuvoton").

26.    Nuvoton Technology Corporation America is a Delaware corporation with a place of business at 2727 N. First St., San Jose, California 95134, U.S.A.

27.    Pegatron Corporation is a company organized under the laws of Taiwan, with a place of business at 5F, No. 76, Ligong St., Beitou, Taipei, Taiwan, R.O.C.; and all U.S. subsidiaries. (Pegatron Corporation, Pegatron Technology Service Inc. and Unihan are collectively referred to as "Pegatron").

28.    Pegatron Technology Service Inc. is an Indiana corporation with a place of business at 121 River Ridge Circle, Jeffersonville, Indiana 47130, U.S.A.

29.    Unihan is a company organized under the laws of Taiwan, with a place of business at No 150 Lide Road, Beitou District, Taipei City, 112, Taiwan, R.O.C. (All defendant parties are collectively referred to as "Defendants").

## COUNT I
## ACTS OF PATENT INFRINGEMENT

30.    Defendants have infringed various claims of each of the patents-in-suit in violation of 35 U.S.C. § 271 through, among other activities, the manufacture, use, importation, sale and/or offer for sale of computer chips, motherboards, computers and other products, as well as using infringing methods including but not limited to testing of Defendants' products as a part of the manufacturing process. In addition to their direct infringement, Defendants have also knowingly and intentionally induced others to

9

infringe under 35 U.S.C. § 271(b) (such as its customers and end-users in this judicial district and throughout the United States) by intentionally aiding, assisting and encouraging their infringement, and defendants have knowingly contributed to the infringement of others under 35 U.S.C. § 271(c) (such as its customers and end-users in this judicial district and throughout the United States) by supplying their technical know-how and infringing computer chips and motherboards (which are non-staple articles of commerce having no substantial non-infringing use). The infringement that has occurred is at least of the following claims of the following patents:

| Patent Number | Claims |
| --- | --- |
| 5,983,002 | 1-6; 8-15 |
| 6,401,222 | 1-7; 9-16; 18-20 |
| 6,687,858 | 1; 3-4 |
| 7,251,752 | 1; 3; |
| 6,691,181 | 1-3; 10-11; 12-14 |
| 7,249,203 | 1; 10-11; 12-14 |
| 7,472,207 | 1; 10-12 |
| 7,069,475 | 6; 14-17; 21; 23 |
| 7,409,601 | 1-4; 6-7; 9-12; 14-15 |
| 6,842,802 | 1-29 |
| 7,366,804 | 1-30 |
| 7,653,766 | 1-19 |

## NOTICE AND WILLFULNESS

31.    On information and belief, all Defendants have had actual and/or constructive notice of their infringement of the patents-in-suit, including actual pre-complaint notice.

10

32.    On information and belief, all Defendants' infringement has been willful and deliberate as to the patents-in-suit and has occurred with the knowledge that chips and cores of Winbond and ITE design have at a minimum infringed Adams' '002 patent in violation of 35 U.S.C. § 284.    Defendants' infringement has injured and will continue to injure Adams, unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further manufacture, use, importation, offers for sale and/or sale of Defendants' products and/or services that contain infringing technology; including but not limited to Winbond's and/or ITE's core; or fall within the scope of any claim of any of the patents-in-suit.

## COUNT II
## MISAPPROPRIATION OF TRADE SECRETS

33.    Plaintiff realleges and incorporates Paragraphs 1-32 above as Paragraphs 1-32 of Count II.

34.    In a prior lawsuit in the Tenth Circuit judicial district of Utah, Adams v. Gateway Inc., No. 2:02-CV-01065, Adams discovered that Gateway had spoliated evidence and improperly attempted to hide damaging documents by asserting that the damaging documents were privileged.    Thereafter, the court ruled that Gateway's assertions of privilege were improper and sanctioned Gateway for improperly asserting privilege in an effort to hide and cover up damaging documents. Adams v. Gateway, 2003 WL 23787856 (D. Utah 2003), *affirmed and ordering production of documents on September 14, 2004*, 2004 WL 2061884 (D. Utah 2004)

11

35.     The court thereafter compelled Gateway to produce certain allegedly "privileged" documents demonstrating that ASUS, Winbond and MSI had obtained an unauthorized and stolen copy of Adams' patented and trade secret technology in 2000, and that ASUS, Winbond and ITE were using the stolen copy of Adams' technology in their manufacture, assembly, and testing of computer products.

36.     In such documents, Winbond, ASUS and ITE admitted that they had obtained copies of Adams' "Detector" programs, proprietary and confidential software programs which Dr. Adams invented.  Furthermore, Winbond and Asus admitted to reverse engineering Adams' Detector programs to determine and distribute Adams trade secrets.  The Detector programs allow a user to determine defects in a computer, and the documents revealed that Winbond, ASUS and MSI actually used the Detector programs in the testing and manufacturing FDC chips and motherboards that contain them.

37.     Winbond and ASUS conspired to pirate Adams' Detector programs. ASUS obtained Adams' Detector testing software and used it to produce its own test utility or software (which it called 1fdc.exe and w2sec.exe) and test its motherboards and Winbond's chops.  Internal e-mails and notes that Winbond produced during the Gateway litigation clearly demonstrate that ASUS worked closely with Winbond in pirating and using Adams software and modifying Winbond chips. ITE also misappropriated Adams software and used it to test and modify its chips.

12

38.     The Detector programs contained trade secrets of Adams, including, among other things, a specific method to allow the detection process to be performed on any byte in a sector.  Adams maintained the Detector programs in confidence, and when it licensed the programs, Adams required in writing that its licensees keep the programs confidential.  Adams maintained the confidentiality of its Detector programs' trade secrets until the aforementioned '222 patent issued on June 4, 2002.  Until that time, Adams' Detector programs' trade secrets were valuable; for example; Compaq Computers licensed the Adams Detector programs, among other patented technology, for $31.5 million.

39.     Through the course of the Winbond Litigation it was determined that additional companies, the Defendants, were knowingly using Adams' proprietary technology that was protected by trade secret.  As a result of these companies knowing use of the material they are liable for trade secret misappropriation.

40.     Adams Detector programs were clearly labeled as the property of Adams, and the current defendants knew, or had reason to know the property to be misappropriated trade secret material.  Defendants also knew or had reason to know that the Adams Detector programs were acquired by improper means.

41.     Defendants' conduct violated the Wyoming trade secret common law.

13

## PRAYER FOR RELIEF

WHEREFORE, Adams respectfully requests this Court enter judgment against Defendants and against their subsidiaries, affiliates, agents, servants, employees and all persons in active concert or participation with them granting the following relief:

A) An award of damages adequate to compensate Adams for the patent infringement by Defendants that has occurred, together with prejudgment interest from the date infringement of each respective patents-in-suit began together with costs, said damages to be no less than a reasonable royalty;

B) An award to Adams of all damages so determined for willful infringement, including an increase of the compensatory damages by up to three times, in accordance with 35 U.S.C. § 284;

C) A finding that this case is exceptional and an award to Adams of all remedies available under 35 U.S.C. § 285, including the costs of this action and reasonable attorney's fees;

D) A permanent injunction prohibiting further infringement, inducement and contributory infringement of the patents-in-suit;

E) For its trade secret misappropriation claim against Defendants, an award of all appropriate unjust enrichment damages, including the disgorgement of all profits denied from the misappropriation; and

F) Such other and further relief as this Court or a jury may deem proper and/or just.

14

DATED:  October 18, 2010.

DRAY, THOMSON AND DYEKMAN, PC

By: _____

Randall B. Reed, Wyo. Bar No. 5-2863
DRAY, THOMSON AND DYEKMAN, PC
204 E. 22nd St.
Cheyenne, WY 82001
Telephone:      (307) 634-8891
Facsimile:      (307) 634-8902

Attorneys for Plaintiffs

15